Morning, Your Honors. May it please the Court, Brett Shumate on behalf of the United States. If I may, I'd like to reserve five minutes for rebuttal today. All right. I'll try to help you out, but please keep your eye on the clock as well. Thank you. Your Honors, the California law at issue here directly regulates the federal government by expressly requiring federal agents to identify themselves when performing their law enforcement duties subject to criminal penalties. The question presented in this case is who decides how federal officers perform their duties. And for centuries, the answer has been clear. The federal government decides how federal officers perform federal duties. California's attempt to directly regulate the federal government's enforcement activities violates the supremacy clause because this court and the Supreme Court have been crystal clear that the states have no power to directly regulate the federal government's activities, regardless of the degree of the burden that the state law might impose on the federal government. Counsel, one of the arguments you raised in your brief, and I want to make sure that I understand that argument, is that because this is a direct regulation on federal employees, we never consider or look to the extent of the burden that's imposed on the federal government, but isn't assessing whether the impact is merely incidental or whether it's burdensome really goes to the heart of figuring out whether this is direct control of federal operations versus just an incidental burden? Isn't that just the methodology for answering that question? No, Your Honor, I think that you recognize this point in the GEO Group opinion where the state is directly regulating the federal government. The state cannot do that. You don't assess the burden. Where the state is regulating contractors or those who do business with the government, that's when the state does have greater authority and you assess the burden and you weigh the competing sovereign interests. But the Supreme Court and this court have been very clear when a state is directly regulating or discriminating against the federal government, you don't weigh the burden. Some direct regulation is authorized in the sense that you have federal agents who are out driving vehicles and the Supreme Court said that the state law rule about turning the corner. They are bound by that. So how do you draw the line between the kinds of regulations, even of federal officers carrying out federal activities that are permissible and those that are not? How do you draw that line? I think Johnson draws the line and that was a generally applicable state licensing law and the court held that that licensing law could not be applied to the postal worker in that case because it interfered with the performance of his duties. And the court recognized in dicta, yeah, there might be some innocuous state laws that apply to everyone that don't interfere with the carrying out of any federal duties like turning square corners. Is it interference? Is it burden? Because now you're sounding like the district court's test. Well, no. I think it's simply recognizing that there may be certain generally applicable state laws that don't have any impact on federal operations whatsoever that are totally innocuous like a speed limit, for example. Counsel, that was. I'm sorry, Judge Bennett. Go ahead. I mean, that was exactly what my hypothetical was going to be, a speed limit that is applicable to everyone. But I don't see how it can be said that it has zero impact on federal operations. I mean, it obviously has some impact, and that gets me back to Judge Collins' question. I understand your argument that Section 10 here doesn't fall remotely in that category, but how do we in framing the appropriate test, how do we sort the speeding regulation, which by its terms applies to the car being driven by the FBI agent just the same as it applies to you or me or the CHIPS officer from this statute? What tests do we apply which would not impact the speeding regulation but would deal with Supreme Court cases that both say you can't directly regulate the federal government but some laws like the speeding law aren't void? So what is the language the United States says we should use to sort the speeding example from Section 10? So the speeding example is an example of a truly generally applicable law that applies to everyone. That's, I think, a different type of case and a harder case for us than a law that specifically and expressly targets the federal government like the law here. Even Johnson, a state licensing law, was a generally applicable law, and the court recognized there might be hard cases. But this is not a hard case because this is a case where the state has expressly identified an activity that is inherently governmental and specifically targeted the federal government and expressly swept in the federal government. So certainly they're going to be – Right, and I think this discussion goes to the heart of my question as well, so I think we're all dancing around the same area, because sometimes it's easy to figure out whether it's direct regulation or not, and sometimes it's not so easy to figure that out. It may be easier in your mind than maybe it is in mine, and that's why we have different ways of articulating where the line really should be drawn. This is a statute that applies to all law enforcement officers requiring not only state officers but federal officers to do what federal officers and state officers have always done, which is to wear a badge with some identifying information. So in answering the question of where the line is drawn, don't we still need to look at whether there's an incidental burden or whether this really in fact goes to the core of federal operations? No, I don't think you need to assess the burden or weigh the burdens when we're talking about direct regulation and discrimination against the federal government. And I disagree that this is a generally applicable law, like a speed limit, like a licensing regime that applies to everyone in the state. This only applies to an inherently governmental function, law enforcement, and the law by itself expressly sweeps in federal law enforcement officers. So this is an easy case. There may be harder cases involving generally applicable laws, and in those situations I think even in the speed limit example, Judge Bennett, if the FBI were racing down the highway to arrest an offender, I don't think the state could enforce their speed limit laws against the FBI or a federal agent who's actively involved in carrying out federal responsibilities. In that situation— But that would be a case-specific judgment under NAGLE. That wouldn't be sort of a facial challenge of the sort you're bringing here, right? Right, right. This is an easier case because the statute on its face directly regulates the federal government. It may be harder cases involving generally applicable laws, like murder laws, or like speed limits where a federal officer may raise a supremacy clause defense to a prosecution. But here, where the statute is directly on its face regulating the federal government, it's like Johnson, it's like city of Arcata. In those cases, you don't assess the burden on the federal government. So in Johnson, for example, the court didn't assess, well, how burdensome would it be for the state or for the post office to get the licenses. In city of Arcata, the court didn't assess, well, how burdensome is this local ban on military recruiting actually going to be on the Pentagon? Those just weren't factors in the analysis at all. It's a strict prohibition when we're talking about a state directly regulating the federal government or discriminating against the federal government. Getting past that issue for a moment, with regard to the statute itself requiring officers to visibly identify their agency as well as a batch number or a name, is it true that having a batch number alone will not permit, let's say, a would-be doctor to find out the identity of the officer, assuming that the officer is also masked? Is that publicly available anywhere? I don't know the answer to your specific question, but I think the law requires both identification of the agency and a batch number. So that essentially prohibits plainclothes policing. Like an officer would have to identify himself or herself as an ICE officer. Assuming that one of the many broad exceptions don't apply. Right, but certainly the state intends for the law to apply. Otherwise, they would have passed a meaningless law. But the exceptions, I think, just put our officers at risk. If they guess wrong, they're going to be brought up on criminal charges by the state. That is an impermissible burden to put on our officers. But even if there's not a risk of doxing because people can't identify the officer's name, they can still know that an officer is engaged in some type of surveillance. It may be an impact on the operations, even if there's no risk of doxing to the officer. But I don't think we need to get into a policy debate about, you know, the state of California because the state of California has no role to play in regulating how the federal government engages in federal law enforcement operations within the state. That's something for the federal government to decide. When we're talking about direct regulation, there may be good policy reasons for the state to enact a regulation that prohibits certain types of law enforcement activities. But where do we go next? If you uphold this law, the next law might be California is going to say, well, we don't like the federal government carrying certain types of weapons. Or we're going to require the federal government to wear certain colors on their uniforms so they can be even more easily identified. Those are just impermissible regulations by the state because they directly regulate. If I can go back to the point about, I think your honors were raising about, are we asserting some type of general immunity? That's not what we're asserting here. What we are asserting is that the federal government is immune from state regulations that directly regulate or discriminate against them. But this doesn't mean that all federal agents are immune from all state laws. Federal officers are subject to those state laws that are generally applicable so long as they don't interfere with how officers carry out their duties and if they have only some type of incidental impact on the federal government. But federal officers… And you had mentioned, for example, in a prior discussion, you used the word murder. So, I mean, there are rules in place where the state could charge a federal agent with a crime and if the United States thinks there's a problem there, they can remove it to federal court for the prosecution and it would get dealt with on a case-by-case basis. That may be the case when we're talking about a generally applicable law like a murder law. But again, I come back to the point, this is not a generally applicable law. It applies specifically to an inherently governmental function and it expressly sweeps in federal law enforcement officers. So we know on its face that this law directly regulates the federal government. With the murder law, the state murder law, yes, it may be generally applicable, but it would be difficult to argue in a facial challenge like we're arguing here that that state law is invalid in all of its applications to the federal government. That's not an argument we're raising here and it's not an argument you need to bite off to resolve this case. This is an easier case where the federal government is being directly regulated by the state and if you don't stop this law, there's no telling where it will stop. I'm happy to answer any further questions, but also I'd like to reserve some time for rebuttal. All right. The state has expressed, I think understandably, a concern about officer anonymity. If there's an incident of excessive force, let's say about shooting, and they need to find out the identity of the officers, I take it your response will be file a lawsuit and through the discovery find out what you can? Well, I think a lot of these issues are worked out at the local level. There doesn't need to be confrontations. I think a lot of times the federal government will assent, like the Postal Service. They're directed to follow state speed limits and for good reason. So with respect to your specific example, I don't know how that would work out in a specific case. Certainly the state can request the federal government provide certain information that might assist their investigations. But I think that's certainly there may be practical concerns down the road, but those policy debates are not something that the court needs to get into because when we're talking about a state law that directly regulates the federal government, the state has no power whether it has a good policy reason or not. All right. Thank you. Any additional questions? Thank you. Good morning. Micah Moore for the State of California. SB 805 requires officers at every level of government to identify their agency and provide a name or a badge number when they take certain enforcement activities without wearing uniforms. It was enacted to address the severe and predictable harms that arise when officers, when members of the public can't distinguish between criminal activity and legitimate law enforcement operations. In recent months, that exact scenario has played out across the country and on the streets of California to the point where even the FBI has warned of the public safety risks. What's your best case for the proposition? Or do you have any case that has upheld a state statute that on its face regulates the conduct of an inherently sovereign activity conducted by the federal government? Is there any case that has upheld such a regulation? I think United States v. California is one example. There, the court held an attempt to apply inspection standards for immigrant detention facilities to But the detention facilities there were local, county, and private. It did not apply or purport to apply to a facility that was operated by the federal government itself. So it was a contractor case. It was a contractor case, and we acknowledge that the state has greater flexibility when a law applies to contractors as opposed to officers directly. But I don't think that that distinction can... So then my question is, that's a contractor case. Do you have a case in which any court has ever upheld a state law that directly regulates a sovereign activity conducted by the federal government? No, I don't have precisely that case, but I think one thing... Okay, so counsel, following up on Judge Collins' question, and I suspect there are many cases that I could quote from, but I'll, as a start, just quote from Mayo v. United States. The Supremacy Clause of the Constitution states the essential principle that it described above, and then it quotes Article VI. It cites Article VI, the Supremacy Clause. A corollary to this principle is that the activities of the federal government are free from regulation by any state. No other adjustment of competing enactments or legal principles is possible. I, like my colleagues, are judges of what the Constitution describes as an inferior court. I have quoted language from the Supreme Court. How is it possible that with the language in Mayo, we could do anything but enjoin Section 10 of this statute as directly violative of the language which I just cited? Because I think that this court and the Supreme Court have acknowledged that states can apply at least some generally applicable regulations to the federal government, consistent with the Supremacy Clause. We know that there's no general immunity of federal officers from state criminal law. We know that states have historically applied tort claims to federal officers without— Those laws regulate conduct that can be performed equally by private citizens. It's kind of like the international law concept of jury imperia and jury gestionis. If it's conduct that can be performed by anyone, then the state regulates it, and it's a question of whether the incidental effect of that general regulation on the federal government is sufficiently burdensome. But here you are directly regulating the sovereign activity, not activity that ordinary citizens can do, but just governmental activity of the federal government, and you're setting the standards for it. And that's where I don't see any precedent for that. And if you have some, I'm all ears, but I don't see any. I think other than United States v. California, I think GEO Group v. Inslee, and I take the point that states have greater flexibility with respect to contractors. But this court has also acknowledged— Like we said in GEO Group. Yes, but at the same time, the court has acknowledged that the state, the federal government does quite a lot of important business through contracting, and it has found the government unlikely to succeed on intergovernmental immunity challenges, even where contractors are carrying out core federal functions like immigration detention. And I think the state has always had— Understandably, I think the state leans very heavily on the cases that analyze incidental benefits and saying, well, this is a generally applicable law, at least insofar as it applies to only law enforcement, and the burden is not on core operations of arrest, detention, investigations, and the like. But here, I think California has done something that we just haven't seen before. It's telling federal officers, law enforcement officers, how to wear their uniform, visibly display a badge. So let's say New Hampshire likes California's statute, if we were to upheld it, and say, well, you know, visible means that it has to be a certain size and it has to be displayed in a certain manner so we can see it. I mean, the officers have these little gold badges when they flash it. I mean, unless you're putting it really close to my face, I'm not going to be able to see what the badge ID is. So somebody is unhappy with that and say, well, it's got to be bigger than that. It's got to be at least, you know, X inches along, you know, X length, and it has to be displayed visibly, you know, say in the back next to the agency name. So what do we do with that? What's the analytical distinction between those sort of statutes and what California is trying to do here? So I think that intergovernmental immunity is not the only place where supremacy clause issues get addressed. In a circumstance in which states really are developing conflicting requirements or imposing burdens on the federal government, I think Congress could step in that circumstance and establish a uniform policy. But this isn't a preemption case. The federal government isn't arguing that there is some sort of state federal practice that outs the states of its regulatory authority. They're relying exclusively on intergovernmental immunity. And I think given the fact that states do retain some authority to apply generally applicable laws, that inquiry needs to consider at least the degree of interference that's being posed on federal operations. But counsel, you mentioned, well, Congress could stop this. But as I read the Supreme Court cases, the Supreme Court says that, well, you can have state regulation when Congress affirmatively allows it. So as I understand the law, it's not because Congress can affirmatively stop it. We can do it. As I understand the law, in many circumstances, it's if Congress allows you to do it, you can do it. And that's the only circumstance in which you can do it. So I don't really see the relevance of the fact that Congress could, if it wanted, pass a law that affirmatively prevents this when the Supreme Court has said, as I read it, the supremacy clause already affirmatively prevents it. Well, I think Congress certainly can bless a regulation that would otherwise violate intergovernmental immunity. But in North Dakota, the Supreme Court advised that this has to be a functional assessment. And it has to be mindful of the fact that Congress always has the ultimate say of whether or not to oust the states of their regulatory authority. And so in a case like this one where the federal government hasn't made a showing that the compliance with SB 805 is going to compromise immigration enforcement in any way, it's our position that it is a question that's best left for Congress. But that means that you should deny the request for emergency relief in this case. But so what you're saying also, though, is to take a different version of Judge Nguyen's hypothetical. We have five or six different laws dealing with this from California to New Hampshire to Alabama. And in all of those states, the determination of whether the states can regulate federal law enforcement in the way they choose is a hearing with evidence and witnesses and expert witnesses in front of the United States district courts who would then make a factual determination of the degree of interference with federal activities. And that would decide whether or not the states in that instance could do it or not after a preliminary injunction hearing or a trial on the merits in the district court. I'm sorry, could you repeat the last part of your question? So the determination of the nature of the burden would be determined by individual district court judges after a preliminary hearing, hearing evidence experts or after a trial on the merits. And that would determine their view of the amount of the burden would determine whether the law violated the supremacy clause or not. I don't think that it has to be a question that receives a trial on the merits. And I want to be clear, too, we're not saying that the federal government isn't entitled to some degree of deference in how they structure their law enforcement operations. But the federal government has come into this court asking for emergency pre-enforcement facial relief. It seems as if both sides agree that some line drawing is necessary because federal officers have never been categorically immune at state law. And so at minimum, I think they need to come to this court with a factual record that shows that there will be interference with immigration enforcement in California. And we respectively think that they haven't done that. And I want to take a moment to address the arguments that the federal government is making in support of their interference argument. I heard my friend on the other side suggest that this statute forecloses plainclothes operations. That's not a correct reading of the law. It only applies in circumstances where officers are engaging in arrest or detention operations or they're being deployed for crowd control purposes. The declarants multiple times in the record expressed concern that law enforcement officers won't be able to meet with confidential informants in secrecy or conduct surveillance operations. Those are all categories of activities that are exempted from the statute. The federal government is also relying on the suggestion that SB 805 would increase the possibility of third party harassment and doxing of officers. I would encourage the court to look closely at their declarations because many of the practices that the federal government expressed concern with aren't going to conflict with SB 805 in any way. And so to give one example, at pages 38 to 39 of their addendum, they describe a phenomenon where people will surveil hotels and photograph license plates in an attempt to identify officers. None of that would be they don't explain how the risk of that would be increased with SB 805, but it is only applying a narrow identification requirement to arrest and detention operations. You said that the government has to come forward with a factual record. And, you know, I agree with you that the exemptions certainly read very broadly if this statute is determined to be constitutional. But do you agree that if we find that this is a direct regulation on federal government employees, then the factual record is really irrelevant? We don't need to engage with that factual record. I agree that I think engagement with a factual record is required to determine whether or not this is a direct regulation because we don't read that language in the literal manner that the federal government does. It does require some assessment in our view of whether or not the application of the regulation is going to interfere with federal operations. And the only way to answer that question is to look at the arguments that the federal government is presenting to the court. Well, in interfering with federal operations, we don't look at just, you know, whether they can carry out the rest. And we also look at who gets to make the policy choices in determining when to identify themselves, under what circumstances to display a badge, and under what circumstances to wear a jacket that displays their agency name. Those are policy considerations and choices that the federal sovereign gets to make for itself. They are, and again, we think the federal government should get some degree of deference in that determination. But I don't, I think it's inescapable that some line drawing is going to need to happen. And that, I think the fact that the federal government hasn't shown a theory for how SB 805 would interfere with immigration enforcement should have a role to play in that analysis. I know in response to Judge Collins' question that you acknowledge that there's no case directly on point that squarely helps us answer this question. What case do you think is your best case? I think United States versus California. I think there you dealt with a generally applicable state law that swept in detention facilities. There, the court seemed to be concerned about the fact that the federal government hadn't made a showing of burden on federal operations. It noted that the federal government was relying only on general pronouncements of supremacy clause harms and unsubstantiated assertions and declarations. And I think that that's very much on parallel with the government's submission here. And I'll just note, to the extent that the law is unclear, I think that that cuts against the federal government. We're not even at the preliminary injunction appeal. We haven't had the opportunity to brief all of these issues on the merits. It's the federal government's burden to make a strong showing that they're likely to succeed. In their brief, they rely heavily on a theory that any state law that applies to federal officers in any way is constitutionally invalid. That can't just be squared with precedent acknowledging that states have flexibility to apply at least some generally applicable laws. If there are no further questions on the merits, I'd like to turn briefly to the equities. As I mentioned, the federal government has to make a strong showing on the merits. If they haven't done that, they need to compensate with a greater showing on the equitable factors. I think the equities here provide an independent reason to deny the federal government's motion. The declarants for the federal government are most concerned about identification in circumstances where the statute simply doesn't require it. As the docs sing, the record doesn't substantiate their concern that a narrow identification requirement that only applies to arrest and detention and crowd call operations is going to significantly increase the risk of third party harassment. And the equities on the other side are – I'm sorry. Do you agree that – just hypothetically, if we were to conclude that the statute facially attempts in violation of the Constitution to regulate the governmental activities of the federal government, would that automatically provide the kind of irreparable harm and public interest that weighs in favor of a preliminary injunction? Wouldn't that follow from that kind of a holding? I understand you don't agree with a holding, but if it did, wouldn't those follow? I think this court has said likelihood of success on a constitutional claim does demonstrate irreparable harm, but I don't think it would relieve the court of the responsibility to balance those harms against the equities that the state has presented. And here the public safety concerns – Could still allow a patently unconstitutional statute to go into effect because we think it might be a good idea in the meantime to give the state a shot anyway? I don't understand that. I think you still have to balance the equities even in the circumstance that you think that a constitutional claim might have merit. It's just not the case that any time a plaintiff shows likelihood of success on a constitutional theory, that that entitles them to an injunction pending appeal. Although it sounds to me like you, counsel, it sounds to me like you essentially just conceded, including because of recent pronouncements by the United States Supreme Court, that whether it is the state of California that is barred from enforcing a clearly constitutional law, or whether it is the United States that is barred by a clearly unconstitutional law, there is significant public interest and balance of equities from either stopping a government entity from doing something that they're legally entitled to do or prohibiting a government entity from doing something that they shouldn't be prohibited from doing. And California has made that argument, right? That stopping California from doing something it should be able to do is by itself a long way towards satisfying the winner factors. We agree that enjoining a democratically enacted law constitutes irreparable harm. Where I think I part ways is that that still doesn't relieve the court of its responsibility to engage in a balancing of the equities. And on the equities, the public safety concerns that are present in this case are not theoretical. They're not even supported exclusively by the state submissions. The FBI has issued a public safety report that catalogs some of the impersonation incidents that have happened because of the- Even the district court said if California's laws violate the supremacy clause, they cannot be in the public interest. Do you think that the court was wrong in saying that? No, but I don't think that that speaks to the- Irreparable harm, it's your laws not in the public interest to allow to go forward. What's left in the balancing? I want to make clear, I don't agree that the law is unconstitutional. Again, I'm very clear. But I still think that some consideration of the substantial public safety concerns that the law is addressing factor into the analysis. Because of what I said earlier, it's just not the case that every time that you establish likelihood of success in a constitutional claim, that that entitles you to equitable relief before any court has had an opportunity to render a decision on the merits. And here, it's- the record is replete with examples of people who thought they were being kidnapped when actually they were the target of legitimate law enforcement operations. People who saw something on the street that they perceived to be criminal activity and contacted their state and local law enforcement when actually it was a legitimate federal enforcement operation. And as I mentioned, that FBI report in the record makes clear that there has been a significant rise in incidents of impersonation because of the confusion that has been created on the ground by the federal government's current practices. This court is entitled to consider all of those factors in doing the balancing. And here, we think it shows that the federal government isn't entitled to extraordinary relief at this stage of the case. If there are no further questions- I ask a technical question about how the statute works. Because there's an additional provision that requires the adoption of a policy. And the district court said the government didn't have standing on- with respect to that because it couldn't be enforced as a practical matter against it. Is that something that the state can enforce against local law enforcement agencies? So that, for example, it could bring an injunctive action or some other action to enforce that if a local jurisdiction failed to obey the command to issue such a policy? No, I think that the policy is just a safe harbor that applies. And I'll note the federal government hasn't shot- it hasn't sought an injunction pending appeal as to the policy provisions. And so they're not at issue at this time. It's not framed as a safe harbor. It's not, if you do this, you get out of it. It's phrased in the statute as an independent command. So it says, by January 1st, 2026, a law enforcement agency operating in California shall maintain and publicly post a written policy on the visible identification of sworn personnel. So it's an independent command. A side benefit is you get an exemption from the criminal provision. But it's phrased as a command. So I assume you can enjoin this- you can enforce that by injunction against a disobedient local government. Standing here, I can only say I'm unaware of any attempt to enjoin the federal government on that theory. We've represented in the district court and before this court- You know, independent of intergovernmental, you wouldn't have sovereign immunity- you'd have a sovereign immunity problem to try and bring a suit against the United States government under this provision. And the federal government, again, they haven't sought an injunction as to the policy provisions, but just as to the conduct provision. No, I understand. But I'm trying to understand how the language of the statute works and how that might be a- you know, whether there's a difference in that respect between the two. And we've represented since the outset. It's just a safe harbor. I think it shows that if anything, the legislature was trying to craft a policy that would be sensitive to federal interests. And so there are no state criminal penalties under the statute if the federal government makes use of that provision. But that isn't an issue at this time. All right. If there are no further questions, we would just- Any additional questions? No, thank you. Thank you for asking, Judge Schoen. We would ask the court to deny the federal government's motion for an injunction pending appeal. Thank you. Your Honors, the state of California has conceded that there is no case that upholds a state regulation of an inherently sovereign function of the federal government. That should be enough for a state pending appeal at this stage of the case. My friend relies on contractor cases, cases involving generally applicable laws. Those are harder cases, to be sure. But those aren't issues that you need to solve at this stage of the case. With respect to the burden, Your Honor, I'd like to point to some language in United States v. California. This is the 2019 iteration of that case. 921 F3rd at 883 and 884. This is the case my friend relied on as her best case. This is the case where the court rejected a de minimis exception to the intergovernmental immunity doctrine. California was making the same argument in that case that they're making here that, oh, well, that law is not going to have significant impacts on the federal government's immigration enforcement activities, or in that case, its detention operations. Well, the court rejected that and says there is no de minimis exception to the doctrine of intergovernmental immunity. And, again, there are two prongs to that doctrine. It's direct regulation and discrimination. We are here under the direct regulation prong. That should be enough to reject the argument that you consider the burdens at this stage of the case. If there are no further questions, we ask the court to grant a stay pending appeal of Section 10 of the No Vigilantes Act. Judge Bennett? I have no further questions. Thank you, Judge Nguyen, for asking. Thank you very much, counsel, to both sides for your very helpful arguments this morning. The matter is submitted and we'll issue our decision in due course. Court is adjourned. All rise. This Court, the dissection stands adjourned.
judges: NGUYEN, BENNETT, COLLINS